# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TYRONE BOSWELL,

      Petitioner,

v.

      Case No. 14-cv-12705

      JUDGE GERSHWIN A. DRAIN

LORI GIDLEY AND DUNCAN MCLAREN,

      Respondents.

_____/

**OPINION AND ORDER
DENYING THE AMENDED HABEAS CORPUS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

This matter has come before the Court on Petitioner Tyrone Boswell's Amended Petition for the Writ of Habeas Corpus under 28 U.S.C. § 2254. Petitioner challenges his Wayne County, Michigan conviction for first-degree, felony murder, MICH. COMP. LAWS § 750.316(1)(b). In his Amended Petition, Petitioner alleges as grounds for relief that the prosecution's proofs were insufficient and against the great weight of the evidence, his trial and appellate attorneys were ineffective, the officer in charge of the case committed perjury, and the trial judge was biased. The State urges the Court to deny the Amended Petition because some of Petitioner's claims are procedurally defaulted, one of the claims is

not cognizable on habeas review, and the state appellate court's rejection of Petitioner's claims was reasonable. The Court agrees that Petitioner's claims do not warrant relief. Accordingly, the Amended Petition will be denied.

## I. BACKGROUND

Petitioner waived his right to a jury trial and was tried before a judge in Wayne County Circuit Court. The state appellate court accurately summarized the evidence at trial as follows:

> [T]his case involves the murder of, and larceny from, Michael Yost, who lived on Muirland in Detroit with his girlfriend, Kimberly Burrell. On the night of June 13, 2009, Yost, carrying at least $200 cash in his wallet and wearing an $800 silver watch encrusted with diamonds, left the home he shared with Burrell to walk to a Marathon gas station near his home. On the way to the gas station, Yost came into contact with defendant and a man who defendant referred to as Dirt, but who police learned went by the name "Mudd." Defendant and Dirt were the last two people seen with Yost before he was shot in the back of the head and his wallet and watch were stolen.

*People v. Boswell*, No. 307342, 2013 WL 3814345, at *1 (Mich. Ct. App. July 23, 2013) (unpublished). Eyewitnesses Shanise Tipton and Deante Simmons were able to identify the suspects by their clothing.

The prosecution's theory was that, at a minimum, Petitioner aided and abetted his accomplice in killing Yost during the commission of a larceny. Petitioner did not testify or present any witnesses. His defense was that he was merely present at the crime scene and that, at most, he was guilty of a larceny.

The trial court, as the trier of fact, found Tipton and Simmons to be credible because they were unbiased and had no motive for lying. The court noted that Tipton never equivocated about what she saw and that Petitioner corroborated Tipton's and Simmons' testimony when he admitted to a police officer that he was present at the crime scene when the shooting occurred. The trial court concluded that Petitioner worked in tandem with "Dirt" and was guilty, as charged, of felony murder. *See* 10/14/11 Trial Tr., at 3-44, Dkt. No. 13-6, pp. 3-44 (Pg. ID 628-669). The trial court sentenced Petitioner to mandatory life imprisonment without the possibility of parole. *See* 11/4/11 Sentence Tr., at 12, Dkt. No. 13-7, p. 12 (Pg. ID 682).

In an appeal of right, Petitioner argued through his first appellate attorney that the prosecution failed to introduce legally sufficient evidence to support his conviction beyond a reasonable doubt. Petitioner filed a supplemental brief through substitute appellate counsel, arguing that there was insufficient evidence of his guilt, the verdict was against the great weight of the evidence, and he was denied the effective assistance of trial counsel by counsel's failure to adequately consult with him, visit the crime scene, and interview *res gestae* witnesses. After substitute counsel was permitted to withdraw from the case, a third attorney was appointed to represent Petitioner on appeal, and that attorney filed a supplemental brief which alleged that trial counsel was ineffective for failing to call certain

witnesses. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his conviction in an unpublished opinion. *See Boswell*, 2013 WL 3814345. Although Petitioner claims that he submitted an application for leave to appeal in the Michigan Supreme Court, the state supreme court has no record of the application. *See* Larry Royster's Affidavit, Dkt. No. 13-9, p. 1 (Pg. ID 921).

In 2014, Petitioner commenced this case. *See* Pet. for Writ of Habeas Corpus, Dkt. No. 1. The petition raised two grounds for relief: insufficient evidence of guilt and ineffective assistance of trial counsel (failure to call certain witnesses). *See id.*, at 6, 8, Dkt. No. 1, pp. 6, 8 (Pg. ID 6, 8).

Petitioner simultaneously moved to hold his habeas petition in abeyance while he pursued state remedies for three new claims. *See* Mot., at 1-4, Dkt. No. 2, pp. 1-4 (Pg. ID 148-151). On August 13, 2014, the Court granted Petitioner's motion and closed this case for administrative purposes. *See* Order, at 1-4, Dkt. No. 4, pp. 1-4 (Pg. ID 153-156).

Meanwhile, on July 8, 2014, Petitioner filed a motion for relief from judgment in the state trial court. He argued that the prosecution elicited fabricated testimony from the officer in charge of the case, that the trial judge was biased, and that appellate counsel was ineffective for failing to raise his two new claims on direct appeal. *See* Mot. for Relief from J., Dkt. No. 13-11, pp. 1-4 (Pg. ID 933-936). On August 20, 2014, the trial court denied Petitioner's motion under

4

Michigan Court Rule 6.508(D)(3) because Petitioner had not shown "good cause" for failing to raise his perjury and judicial-bias claims on appeal and actual prejudice from the alleged irregularities. The trial court also found no merit in Petitioner's claims, including his claim about appellate counsel. *See People v. Boswell*, No. 11-005601-FC (Wayne Cty. Cir. Ct. Aug. 29, 2014), Dkt. No. 13-12, pp. 1-4 (Pg. ID 978-981).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Rule. 6.508(D). The Court of Appeals stated that Petitioner had alleged grounds for relief which could have been raised previously and that Petitioner had failed to establish both "good cause" for failing to previously raise the issues and actual prejudice from the alleged irregularities. The Court of Appeals rejected Petitioner's claim about appellate counsel for lack of merit. *See People v. Boswell*, No. 325648 (Mich. Ct. App. Apr. 9, 2015), Dkt. No. 13-13, p. 1 (Pg. ID 983).

Petitioner raised the same issues in the Michigan Supreme Court. He also incorporated by reference his supplemental brief from his direct appeal where he argued that there was insufficient evidence of guilt at trial, that the verdict was against the great weight of the evidence, and that he was denied the effective assistance of counsel. On March 29, 2016, the Michigan Supreme Court denied

leave to appeal because Petitioner had failed to establish entitlement to relief under Rule 6.508(D). *See People v. Boswell*, 499 Mich. 881; 876 N.W.2d 535 (2016).

On June 6, 2016, Petitioner filed a motion to amend his habeas petition and to re-open this case. *See* Mot., at 1-6, Dkt. No. 6, pp. 1-6 (Pg. ID 159-164). The grounds for relief in the amended petition allege that: (1) there was insufficient evidence at trial to sustain Petitioner's conviction; (2) trial counsel failed to subpoena exculpatory *res gestae* witnesses; (3) the trial court's verdict was against the great weight of the evidence; (4) trial counsel was ineffective for failing to: (a) consult adequately with Petitioner, (b) visit the crime scene, and (c) interview certain *res gestae* witnesses; (5) the conviction was based on the perjured testimony of police officer Scott Shea; (6) the trial judge was biased; and (7) appellate counsel was ineffective for failing to present claims five and six in the appeal of right. *See* Memorandum of Law Supporting First Am. Pet., at 4-13, Dkt. No. 7, pp. 4-13 (Pg. ID 224-233).

The Court granted Petitioner's Motion to Amend his Habeas Petition and to re-open this case. *See* Op. and Order, at 1-5, Dkt. No. 10, pp. 1-5 (Pg. ID 241-245.) In the same order, the Court directed the State to file an Answer to the Amended Petition and granted Petitioner permission to file a Reply to the State's Answer. *Id*., at 4, Dkt. No. 10, p. 4 (Pg. ID 244). The State subsequently filed an Answer to the Amended Petition, *see* Answer in Opp'n to Am. Pet., Dkt. No. 12,

and although the Court extended the deadline for filing a Reply to the State's Answer, *see* Order, Dkt. No. 15, Petitioner has not filed a Reply.

The State maintains that Petitioner's first four claims are procedurally defaulted because Petitioner did not raise those claims in the Michigan Supreme Court on direct review. Petitioner, however, has submitted documentation showing that he placed his supreme court application in the prison's outgoing mail on September 13, 2013. *See* Pet. for Writ of Habeas Corpus, Ex. A, Dkt. No. 1 (Pg. ID 19). For some unknown reason, the application apparently never reached the state supreme court, and the Michigan Supreme Court informed Petitioner on May 1, 2014, that it did not receive any papers from him in 2013. *See id.*, Ex. C (Pg. ID 23). Petitioner does not appear to be at fault for failing to raise his first four claims in the Michigan Supreme Court on direct review. The Court, therefore, excuses the alleged procedural default related to Petitioner's first four claims and proceeds to address those claims, using the following standard of review.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

# III. ANALYSIS

## A. Claim One:  Insufficient Evidence

Petitioner alleges first that the prosecution deprived him of due process and a fair trial by producing insufficient evidence of felony murder.

### 1.  Clearly Established Federal Law

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).  "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker*

*v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Moreover, under AEDPA, the Court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

First, it is the responsibility of the trier of fact to decide what conclusions should be drawn from the evidence admitted at trial. *Id.* "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.*

> "[T]his standard is difficult to meet," no doubt, but "that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03, 131 S. Ct. 770 (internal quotation marks and citation omitted).

*Thomas*, 898 F.3d at 698.

## 2. Felony Murder

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and, in Michigan,

> [t]he elements of first-degree felony murder are: " '(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b), here larceny].' " *People v. Carines,* 460 Mich. 750, 758–759, 597 N.W.2d 130 (1999) (citation omitted).

*People v. Smith*, 478 Mich. 292, 318–19; 733 N.W.2d 351, 365 (2007).

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. *People v. Carines,* 460 Mich. 750, 755, 597 N.W.2d 130 (1999).

*People v. Riley*, 468 Mich. 135, 140; 659 N.W.2d 611, 614 (2003). Malice may be inferred from the use of a deadly weapon, *Carines*, 460 Mich. at 759; 597 N.W.2d at 136, and from participation in the underlying offense, *People v. Bulls*, 262 Mich. App. 618, 625; 687 N.W.2d 159, 164 (2004).

### 3. Application of the Law to the Facts

The parties stipulated that Yost was killed by a gunshot wound to the head. The relevant questions are whether Petitioner shot Yost or aided and abetted "Dirt" in shooting Yost, whether the shooting occurred during the commission of an enumerated felony, and whether Petitioner possessed the requisite intent.

The trial court concluded that sufficient evidence existed to prove that Petitioner either shot Yost or aided and abetted "Dirt" in killing Yost, because the two men were working in tandem. The Michigan Court of Appeals agreed, stating that

> it does not matter if defendant fired the gun because sufficient evidence existed showing that he, at a minimum, aided Dirt in the killing of Yost. Second, at the time that Yost was shot in the head, both defendant and Dirt were standing in close proximity to Yost. In fact, by his own admission, defendant placed himself and Dirt at the scene of Yost's murder, explaining that he, Dirt, and Yost were walking down Muirland when defendant heard a "loud boom" and he saw Yost's white hat fall to the ground. Defendant contends that it is unclear who shot Yost; in fact, defendant argues that Yost was probably shot by a gunman who was hiding some distance from the men. However, defendant told Detroit Police that he saw Dirt holding a gun after he heard the loud boom and witnessed Yost fall to the ground.

> Further evidence also linked defendant to Yost's murder. Shanise Tipton and Deante Simmons both witnessed Yost's murder. Tipton witnessed a group of three men who matched the descriptions of Yost, Dirt, and defendant. Tipton saw them walking and then they stopped and started talking. At some point, Tipton heard a gunshot come from the direction of the three men. Tipton testified that she did not see

anything that would lead her to believe either man had a gun. After the gun was fired, Tipton witnessed Yost fall to the ground, while men matching the descriptions of Dirt and defendant stayed standing near the body. Next, Tipton witnessed the man who fit Dirt's description walk toward the alley and stop while the man who matched defendant's description went through Yost's pocket and removed a large item.

Simmons also witnessed the incident. According to Simmons, after the shooting, one of the men served as a "look-out" while the other man rifled through Yost's pockets. All of this evidence places defendant at the scene of the murder at the precise time of the murder. Because defendant searched through Yost's pocket after Yost was shot, it was reasonable for the judge to infer that one of the men, either defendant or Dirt, committed the killing. Even if defendant did not commit the killing, there is evidence that defendant performed acts or gave encouragement that assisted Dirt in the commission of the killing. In fact, if defendant truly had nothing to do with Yost's murder, it is unlikely that an eyewitness would see a man who matched defendant's description pull something out of Yost's pocket while Yost was lying on the ground with a gunshot wound to the head. Additionally, the position of the man who matched the description of Dirt serving as a look-out while defendant looked through Yost's pockets serves as evidence that the two men were acting together when Yost was killed.

*Boswell*, 2013 WL 3814345, at *2 -*3.

A rational trier of fact could have concluded from this evidence, as the Michigan Court of Appeals did, that Petitioner killed Yost or aided and abetted "Dirt" in killing Yost. *Id*. at *3. A rational trier of fact also could have concluded from the use of a gun during the incident that Petitioner intended to kill Yost, intended to cause great bodily harm, or wantonly and willfully disregarded the

likelihood that the natural tendency of his behavior was to cause death or great bodily harm. Even if he did not actually handle the gun, "he nevertheless 'used' the weapon, with [his accomplice's] help, to perpetrate the crime and such 'use' also supports an inference of malice." *Bulls*, 262 Mich. App. at 627; 687 N.W.2d at 165.

Furthermore, larceny is one of the felonies enumerated in the felony murder statute, MICH. COMP. LAWS § 750.316(1)(b), and there was sufficient evidence that Petitioner committed a larceny or assisted Dirt in committing the larceny during the killing. As explained by the Michigan Court of Appeals,

> Burrell testified that Yost should have had roughly $250 in cash in his wallet and that Yost was wearing a diamond encrusted watch. Defendant told police that both items were taken from Yost by Dirt. . . . Additionally, neither the wallet nor the watch was ever recovered. Viewing these facts in the light most favorable to the prosecution, defendant removed something that belonged to Yost from Yost's person and took it without Yost's permission because Yost was dead.

> Additionally, sufficient evidence supports a finding that the property was moved; in fact, Tipton witnessed the man who matched defendant's description move further down the alley and catch up with the man who matched Dirt's description. . . . Next, sufficient evidence supported a finding that defendant took the property with the intent to permanently deprive Yost of his belongings. In fact, he killed Yost to get the property. . . . Finally, sufficient evidence supported a finding that defendant took the property from Yost's immediate area of control or immediate presence. In fact, Tipton witnessed him remove it from Yost's front right pocket. . . .

*Id*. at *3 -*4.  As for whether Petitioner had the intent to commit a larceny during the homicide, the Court of Appeals noted that,

> [a]ccording to defendant, himself, he walked to the Marathon gas station to "get some blunts." Defendant said that he was accompanied by Dirt. Defendant said that on his way to the gas station, he and Dirt "came across" Yost. The video surveillance footage from the Marathon gas station shows that the first man to walk into the gas station was Yost. Then, eventually, both Dirt and defendant entered the Marathon station, and the two, standing only five to five and a half feet away from Yost, appeared to have a conversation. This conversation appears to have taken place for at least 15 seconds. At one point, both Dirt and defendant exited the Marathon station. This left Yost in the station by himself. However, defendant and Dirt returned and, eventually, all three men, including Yost, left the Marathon station. Viewing the evidence in the light most favorable to the prosecution, this evidence shows that (1) defendant and Dirt had an opportunity to see Yost's watch and possibly his wallet and (2) defendant and Dirt had time to formulate a plan to kill Yost to get his watch and whatever else he may have carried on his person. In fact, after Yost was shot, instead of trying to get Yost medical help, calling the police, or getting assistance from someone in the neighborhood, both Dirt and defendant stayed near the body; Dirt served as a look-out, and defendant went through Yost's pocket. The relationship in time between the murder and the larceny, when viewed in the light most favorable to the prosecution, provides sufficient evidence that defendant had the intent to commit larceny before or at the time he killed or assisted in the killing of Yost.

*Id*. at *4.

A rational trier of fact could have concluded from all the evidence summarized above, that Petitioner aided and abetted "Dirt" in killing Yost during the commission of a larceny and that Petitioner possessed malice at the time.

Thus, the prosecution proved the essential elements of first-degree felony murder beyond a reasonable doubt.  In addition, the state appellate court's conclusion – that the essential elements for felony murder were proved – was objectively reasonable.  Petitioner, therefore, has no right to relief on his challenge to the sufficiency of the evidence.

**B.  Claims Two and Four:  Ineffective Assistance of Trial Counsel**

The second and fourth claims allege that Petitioner was deprived of the effective assistance of counsel guaranteed him under the Sixth Amendment to the United States Constitution.  Specifically, Petitioner alleges in claim two that trial counsel failed to subpoena Dorian Clarice Wallace and Debra Hardwick, who would have supported his defense of actual innocence.  In claim four, Petitioner alleges that trial counsel failed to consult adequately with him, failed to visit the crime scene to determine whether the witnesses gave an accurate description of the incident, and failed to interview *res gestae* witnesses to determine whether someone named Charles Taylor murdered Yost.

To prevail on his ineffectiveness claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth

Amendment." *Id*. (internal quotation marks omitted). "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

### 1. Failure to Interview and Subpoena Witnesses

Petitioner alleges that trial counsel was ineffective because he failed to interview and subpoena Dorian Clarice Wallace and Debra Hardwick to determine whether Charles Taylor, and not Petitioner, murdered Yost.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Under *Strickland*, however, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). "[C]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353–54 (6th Cir. 1993). Further, in the absence of any evidence showing that uncalled witnesses would have offered specific favorable testimony, a petitioner cannot establish *Strickland* prejudice from counsel's failure to produce the witnesses. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

Wallace informed a police officer on August 15, 2009, that Charles Taylor admitted to killing Yost in retaliation for Yost killing Taylor's brother. *See* Amended Pet. for Writ of Habeas Corpus, Dkt. No. 7, pp. 52-53 (Pg. ID 218-219). However, on January 7, 2011, which was nine months before Petitioner's trial, Wallace gave a second witness statement in which she said that, after she gave her

statement in August 2009, Taylor told her that he had nothing to do with the murder, and she believed him. *See id*., p. 50 (Pg.ID 216). In light of Wallace's 2011 statement, trial counsel was not ineffective for failing to interview and subpoena Wallace. As the state appellate court pointed out,

> even if defense counsel had investigated the lead or called this witness, either the witness would have testified consistent with her more recent statement, which would not help defendant's case, or she would have testified consistent with the first statement and been impeached by the subsequent statement. Thus, defense counsel's alleged failure to investigate or call the witness appears to be a clear exercise of trial strategy.

*Boswell*, 2013 WL 3814345, at *6.

The Court of Appeals also concluded that Petitioner could not prove any prejudice from counsel's failure to investigate and call Wallace, because

> [o]verwhelming evidence, including defendant's own statements to [Office Scott] Shea and phone calls defendant made shortly after the murder of Yost, place defendant directly beside Yost when he was murdered. Furthermore, defendant told Shea that he saw Dirt holding a gun after Yost was shot. It is entirely possible that defense counsel strategically did not investigate this issue or raise it at trial because it would have further called into question defendant's credibility.

*Id*.

As for Hardwick, she merely informed a police officer on the day after the shooting that she heard a gunshot and then saw a man lying in the street. She also

saw two other men, but it was dark outside, and she could not identify the men. *See* Pet. for Writ of Habeas Corpus, Ex. B, p. 25 (Pg. ID 125).

Hardwick's statement to the police was similar to the testimony of prosecution witnesses Tipton and Simmons, who also saw two men near the victim, but could not identify the men by their faces. *See, e.g.,* 10/13/11 Trial Tr., at 10-11, 17-19, Dkt. No. 13-5, pp. 10-11, 17-19 (Pg. ID 563-64, 570-572) (Tipton's testimony); *id.* at 45, Dkt. No. 13-5, p. 45 (Pg. ID 598) (Simmons' testimony). Therefore, Hardwick would not have benefitted the defense, and Petitioner was not prejudiced by defense counsel's failure to interview and produce Hardwick as a defense witness.

## 2. Failure to Consult

Petitioner alleges next that trial counsel failed to consult adequately with him. Petitioner alleged in his state appellate brief that counsel visited him only two times before trial and that the purpose of one of the visits was to ask for money. The Michigan Court of Appeals rejected this claim because there was no evidence in the record to support Petitioner's contention and, therefore, counsel presumably acted effectively.

The Supreme Court has said that defense attorneys have "a duty to discuss potential strategies with the defendant," and "to consult with the client regarding 'important decisions,' including questions of overarching defense strategy."

*Florida v. Nixon*, 543 U.S. 175, 178, 187 (2004); *see also Jemison v. Foltz*, 672 F. Supp. 1002, 1007 (E.D. Mich. 1987) ("Defense counsel had a duty to consult with defendant on important decisions, and to bring to bear on the case such skill and knowledge as to make the trial a reliable adversary proceeding.").  But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."  *Morris v. Slappy,* 461 U.S. 1, 11 (1983).  "[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689).

The facts in this case were not complicated, and the number of times that defense counsel visited Petitioner is not necessarily indicative of deficient performance.  As stated in *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980),

> the brevity of time spent in consultation, without more, does not establish that counsel was ineffective.  Therefore, it is not enough to merely show that counsel only met with [the petitioner] twice before trial as long as counsel devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case.

*Id*. at 759 (internal citations omitted).

The record in this case indicates that defense counsel was prepared for trial, and Petitioner has not alleged what impact his limited visits with defense counsel had on his trial. Thus, Petitioner has failed to show that his attorney's limited consultations with him amounted to the ineffective assistance of counsel.

### 3. Failure to Visit the Crime Scene

Petitioner alleges that his attorney should have visited the crime scene to determine whether the witnesses gave an accurate description of the incident. According to Petitioner, Tipton and Simmons were 150 feet away from where the crime occurred, not 50 feet away, as they claimed at trial. Petitioner alleges that his attorney would have discovered this fact if he had visited the crime scene and that the information could have been used to attack the witnesses' credibility and ability to see accurately.

The Michigan Court of Appeals rejected Petitioner's claim because he relied on a map or sketch that was not drawn to scale and that provided no measurements to determine how far apart the objects were. The Court of Appeals also stated that there were no facts in the record to support the contention that defense counsel never visited the murder scene or that Tipton and Simmons stood more than 50 feet away from the scene of the crime.

As noted above, defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

unnecessary." *Strickland*, 466 U.S. at 691. But "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Tipton testified that the three men she observed were standing under a streetlight and that she got a good look at them. 10/13/11 Trial Tr., at 9, 18-19, Dkt. No. 13-5, pp. 9, 18-19 (Pg. ID 562, 571-72). She also testified that she was looking at the men the entire time. *Id.* at 21, 29-30, Dkt. No. 13-5, pp. 21, 29-30 (Pg. ID 574, 582-583).

Simmons testified that he was less than fifty feet away from the men when he made his observations and that the men were standing by a streetlight. *Id.*, at 46, 39, Dkt. No. 13-5, pp. 46, 39 (Pg. ID 599, 592). When defense counsel asked Simmons about the basis for his conclusion that one man was acting as a lookout, Simmons said, "I was right there." *Id.*, at 43, Dkt. No. 13-5, p. 43 (Pg. ID 596). Finally, police officer David Haines testified that the area near the victim's body was illuminated by a working public utility light. 10/12/11 Trial Tr., at 67, Dkt. No. 13-4, p. 67 (Pg.ID 487).

Given the eyewitnesses' testimony about the lighting at the crime scene and their ability to see, the result of the trial in all likelihood would not have been different if defense counsel had visited the crime scene and tried to impeach the eyewitnesses with their ability to observe the crime. Thus, defense counsel's alleged failure to visit the crime scene did not prejudice Petitioner.

To conclude, Petitioner has failed to show that his trial attorney's performance was deficient and that the deficient performance prejudiced his defense. Additionally, the state appellate court's rejection of Petitioner's ineffectiveness claims was not contrary to, or an unreasonable application of, *Strickland.* Petitioner has no right to relief on his second and fourth claims.

## C. Claim Three: The Verdict Was Against the Weight of the Evidence

The third habeas claim alleges that the trial court's ruling was against the great weight of the evidence. Petitioner points out that there was no forensic evidence linking him to the crime. He also contends that: he made no confession or inculpatory statements; Wallace admitted to an officer that someone else confessed to committing the crime; Hardwick was an eyewitness to the crime, but she did not identify him as the murderer; Officer Shea committed perjury; and the trial judge was impermissibly pro-prosecution.

The Michigan Court of Appeals stated on direct review that

[t]he trial court's ruling was not against the great weight of the evidence because the evidence did not preponderate heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand. [*People v.*] *Lemmon,* 456 Mich. [625, 627; 576 N.W.2d 129 (1998)]. In fact, . . . the great weight of the evidence— from defendant's own statements, video surveillance footage at the Marathon gas station, eyewitness testimony, and the timing of the larceny in relation to the murder—supported a finding that defendant was guilty of first-degree felony murder.

*Boswell*, 2013 WL 3814345, at *5.

This Court finds no merit in Petitioner's claim because a weight-of-the-evidence argument is a state-law argument, *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because Petitioner has not alleged a violation of federal law, his claim is not cognizable on habeas review.

## D. Claims Five, Six, and Seven: Perjury, Judicial Bias, and Ineffective Assistance of Appellate Counsel

The fifth habeas claim alleges that the prosecution relied on, and failed to correct, Officer Shea's perjured testimony, and the sixth claim alleges that the trial court was biased against Petitioner. The State argues that these claims are

procedurally defaulted because Petitioner did not raise the claims on direct appeal and because the state appellate court relied on that fact to deny relief.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Federal courts deem a habeas petitioner's claim procedurally defaulted

> if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### 1.  The State Rule

The state procedural rule at issue here is Michigan Court Rule 6.508(D)(3), which reads in relevant part as follows:

(D) Entitlement to Relief.   The defendant has the burden of establishing entitlement to the relief requested.   The court may not grant relief to the defendant if the motion

. . . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated the essence of Rule 6.508(D)(3) by not raising his perjury and judicial-bias claims in the appeal of right.  Instead, he raised the claims for the first time in his motion for relief from judgment and subsequent appeals. Therefore, the first procedural-default factor is satisfied.

### 2.  Enforcement of the State Rule

The state trial court enforced Rule 6.508(D)(3) in its opinion denying Petitioner's motion for relief from judgment.  The court stated that Petitioner had not shown "good cause" under Rule 6.508(D)(3), nor proved actual prejudice.  The Michigan Court of Appeals also determined that Petitioner's claims about Officer

Shea and the trial court could have been raised previously and that Petitioner had failed to establish both good cause for failing to raise the issues previously and actual prejudice from the irregularities alleged.

Although the trial court also addressed Petitioner's fifth and sixth claims on the merits, the alternative holdings "do[] not require [the Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original). The Court concludes that the second procedural default factor is satisfied.

### 3. The Adequacy and Independent Ground for the State Rule

The third factor is satisfied if the state procedural rule in question was an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit has said that the procedural bar set forth in

Rule 6.508(D) is an adequate and independent ground on which state courts may rely to foreclose review of federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Therefore, the third procedural-default factor is satisfied.

### 4. "Cause" for the Procedural Default

The fourth factor requires a habeas petitioner to show "cause" for his state procedural error and resulting prejudice. Petitioner alleges in his seventh claim that his appellate attorney inexcusably failed to present claims five and six in the appeal of right. The state trial court, however, found no merit in Petitioner's claim about appellate counsel because Petitioner could not show any prejudice from appellate counsel's decisions.

"Ineffective assistance of counsel . . . is cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But an indigent defendant has no constitutional right to compel appointed counsel to raise nonfrivolous claims on appeal if counsel, as a matter of professional judgment, decides not to present those claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, as the state trial court recognized on review of Petitioner's claim, "the process of winnowing out weaker arguments on appeal is the hallmark of effective appellate advocacy." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks and end citations omitted).

To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability Petitioner would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694). When assessing the prejudice prong of this test, the Court looks to whether appellate counsel's actions prejudiced Petitioner, which means that the Court must assess the strength of the claims that appellate counsel failed to raise. *Carter v. Parris*, __ F.3d __, No. 17-5498, 2018 WL 6441617, at *4 (6th Cir. Dec. 10, 2018) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). "If there is no 'reasonable probability that inclusion of the issue would have changed the result of the appeal,' then habeas relief will not be granted." *Id*. (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)).

### i. Perjury

Petitioner alleges that the prosecution convicted him on the basis of perjured testimony provided by Officer Shea, who testified about his interview with Petitioner on October 18, 2009, approximately five months after the murder of Yost. According to Shea, Petitioner initially denied being present during the shooting, but later admitted during the interview that he went to a gas station with Yost and "Dirt" on the night in question. Petitioner also stated that, as the group

walked down Muirland, Yost told "Dirt" not to walk behind him, and "Dirt" responded by saying something to Yost. They continued walking down Muirland. Petitioner then heard a gunshot and took off running. He looked back and saw "Dirt" robbing Yost. 10/12/11 Trial Tr., at 115-17, 122, 128, Dkt. No. 13-4, pp. 115-17, 122, 124, 128 (Pg. ID 535-37, 542, 544, 548).

Petitioner has not alleged what was false about Shea's testimony. However, in his state post-conviction motion, Petitioner alleged that, contrary to Shea's testimony, he repeatedly told Shea that Yost was shot by someone who was conversing with Yost in the alley. According to Petitioner, Shea responded by stating that, if Petitioner wanted to go home, he had to change his statement.

Shea's contrary testimony about the voluntariness and content of Petitioner's statement to him does not establish perjury. *See United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989) ("[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."). In fact, nothing that Shea said suggested that he was lying. His testimony that Petitioner was involved in the murder was consistent with the rest of the evidence.

Furthermore, Petitioner has not established that the prosecution knew Shea's testimony was false. *Cf. Amos v. Renico,* 683 F.3d 720, 728 (6th Cir. 2012) (explaining that, to prevail on a claim that the prosecution presented false testimony, a petitioner must show that the testimony was actually false and that the

prosecutor knew the testimony was false).  Therefore, Petitioner has failed to prove his perjury claim, and appellate counsel was not ineffective for failing to raise the claim on appeal.

### ii.  The Trial Court

Petitioner's sixth claim alleges the trial court was pro-prosecution and biased against him.  The state trial court opined on review of this claim that its conduct was not improper and that it did not pierce the veil of judicial impartiality.  The trial court concluded that Petitioner's claim lacked merit.

To prevail on a claim of judicial bias, a defendant must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused."  *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).   In his post-conviction motion, Petitioner alleged that the trial court's conduct resembled that of a prosecutor, as opposed to, a detached and impartial judge.  Petitioner also alleged that the trial court made improper inferences from the evidence when the court stated that Petitioner was working in tandem with "Dirt," that Petitioner looked a little nervous in the video of the incident at the gas station, and that the victim appeared to think something was not right.

The trial court, however, was the trier of fact and entitled to draw reasonable inferences from the evidence.  *Jackson*, 443 U.S. at 319.   Furthermore, neither the

trial court's findings of fact, nor its conclusions of law, establish that the court was biased against Petitioner.  Judicial rulings almost never constitute a valid basis for a claim of judicial bias or partiality.  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

The trial court's findings of fact and conclusions of law in Petitioner's case do not reflect a deep-seated favoritism toward the prosecution, nor antagonism toward Petitioner.  Therefore, appellate counsel was not ineffective for failing to raise Petitioner's judicial-bias claim on direct appeal.

The Court concludes that Petitioner's underlying claims about Officer Shea's testimony and the trial court's alleged bias lack merit, and there is no reasonable probability that inclusion of the issues would have changed the result of the appeal.  Accordingly, appellate counsel satisfied *Strickland's* deferential standard, and Petitioner's independent claim about appellate counsel lacks merit. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Furthermore, because appellate counsel was not constitutionally ineffective,

Petitioner has failed to show "cause" for his procedural default of not raising his fifth and sixth claims in the appeal of right.

## 5. Prejudice; Miscarriage of Justice

The Court need not determine whether the alleged constitutional errors prejudiced Petitioner, because he has failed to show cause for his failure to comply with state law. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496.) "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Wallace and Hardwick's statements to the police were not introduced at Petitioner's trial, but their statements fail to establish that Petitioner is actually innocent. Therefore, a miscarriage of justice will not occur as a result of any

failure to address the substantive merits of Petitioner's claims about Officer Shea and the trial court. Those claims are procedurally defaulted, and the related claim about appellate counsel does not entitle Petitioner to relief because the underlying claims about Office Shea and the trial court are meritless.

## IV. CONCLUSION AND ORDER

Petitioner's fifth and sixth claims are procedurally defaulted, his seventh claim lacks substantive merit, and his third claim is not cognizable on habeas review. Additionally, the state appellate court's rejection of Petitioner's first, second, and fourth claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. The state-court decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly, **IT IS ORDERED** that the Amended Petition for a Writ of Habeas Corpus (Dkt. No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED** because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues are adequate to deserve encouragement to proceed further.

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As for Petitioner's procedurally defaulted claims, reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right or whether the Court's procedural ruling on the defaulted claims is correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Nevertheless, an appeal could be taken in good faith.

Accordingly, **IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated:      April 5, 2019

s/Gershwin A. Drain

HON. GERSHWIN A. DRAIN

United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 5, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager